# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLISON CAMPBELL, an individual, on behalf of herself, and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SKYWEST AIRLINES, INC., a corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 3:24-CV-2141 TWR (SBC)<br><br>**ORDER DENYING MOTION TO REMAND ACTION TO STATE COURT**<br><br>(ECF No. 8) |

Presently before the Court is Plaintiff Allison Campbell's Motion to Remand Action to State Court ("Mot.," ECF No. 8), as well as Defendant SkyWest Airlines, Inc.'s Response in Opposition to ("Opp'n," ECF No. 10) and Plaintiff's Reply in Support of ("Reply," ECF No. 13) the Motion. Having carefully considered the Parties' arguments, Plaintiff's Complaint ("Compl.," ECF No. 1-2), Defendant's Notice of Removal to Federal Court ("NOR," ECF No. 1), and the relevant law, the Court **DENIES** Plaintiff's Motion as follows.

## BACKGROUND

Defendant is an airline corporation that provides flight services in California and other states. (Compl. ¶ 2.) Plaintiff was employed by Defendant from August 2023 to

February 2, 2024, and was at all times classified by Defendant as a non-exempt employee and paid on an hourly basis. (Compl. ¶ 3.) Accordingly, Plaintiff was legally entitled to meal and rest breaks, minimum and overtime wages, and other employment rights and benefits. (*Id.*)

On August 22, 2024, Plaintiff filed a Complaint in the Superior Court for the State of California, County of San Diego, (Compl. ¶ 1), on behalf of herself and two classes of similarly situated individuals: (1) the "California Class," including all individuals who are or previously were employed in California, including any employees staffed with Defendant by a third party, and classified as non-exempt employees at any time during the period beginning four years prior to the filing of the Complaint, (Compl. ¶ 4); and (2), the "California Labor Sub-Class," including all members of the California Class who are or previously were employed by Defendant in California, including any employees staffed with Defendant by a third party, and classified as non-exempt employees at any time during the three (3) years prior to the filing of the Complaint, (Compl. ¶ 35).

Plaintiff's Complaint contains the following nine claims: (1) unfair competition in violation of California Business & Professional Code Section 17200; (2) failure to pay minimum wages in violation of California Labor Code Sections 1194, 1197, and 1197.1; (3) failure to pay overtime wages in violation of California Labor Code Section 510; (4) failure to provide required meal periods in violation of California Labor Code Sections 226.7 and 512 and the applicable Industrial Welfare Commission Wage Order; (5) failure to provide required rest periods in violation of California Labor Code Sections 226.7 and 512 and the applicable Industrial Welfare Commission Wage Order; (6) failure to provide accurate itemized wage statements in violation of California Labor Code Section 226; (7) failure to reimburse employees for required expenses in violation of California Labor Code Section 2802; (8) failure to provide timely wages when due in violation of California Labor Code Sections 201, 202, and 203; and (9) failure to provide sick pay wages in violation of California Labor Code Section 201, 202, 203, 233, and 246. (*See generally* Compl.) While emphasizing that violations were "from time to time," (Compl. ¶¶ 8, 11, 12, 14, 87, 91,

96), Plaintiff's Complaint generally alleges that Defendant had a "policy and practice," of failing to compensate class members for time worked, (Compl. ¶¶ 5, 32, 49, 63, 64, 77, 87, 100, 111, 113).

On October 15, 2024, Plaintiff served Defendant with the Complaint, and on November 11, 2025, Defendant timely filed a Notice of Removal of Action with the United States District Court for the Southern District of California pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). (*See* NOR at 1–2.) The Notice of Removal asserts that CAFA provides this Court with original jurisdiction over civil class actions in which there are more than 100 putative class members, any plaintiff is diverse from any defendant, and the total amount-in-controversy exceeds five million dollars. (*See id.* ¶ 10.) Defendant asserts that the CAFA requirements are satisfied here because Defendant is a citizen of Utah, while members of the putative class are citizens of other states, including California, (*see id.* ¶¶ 13–14), there are more than 100 class members, (*see id.* ¶¶ 17–18), and the amount-in-controversy for two of Plaintiff's nine claims is at least $13,999,182, well exceeding five million dollars, (*see id.* ¶ 26).

On December 13, 2024, in response to Defendant's Notice of Removal, Plaintiff filed the instant Motion. (*See generally* Mot.) Plaintiff's Motion primarily challenges Defendant's amount-in-controversy estimate, but it also argues that Defendant's assertions regarding the size of the putative class and the diversity of the parties are unsupported and unsubstantiated. (*See id.* at 2–7.) As such, Plaintiff asks this Court to remand the pending action to the Superior Court of California, County of San Diego. (*See id.* at 8.)

On January 16, 2025, Defendant filed its Opposition, in which it recalculated the amount-in-controversy, this time estimating the potential damages for five of Plaintiff's nine claims as at least $39,756,197.58. (*See* Opp'n at 12, 22–23.) To support this estimate, Defendant submitted a Declaration from Steven Spagnolo ("Spagnolo Decl.," ECF No. 10-1), a manager familiar with Defendant's payroll practices, timekeeping systems, and related records, as well as Defendant's Flight Attendant Policy Manual, (ECF No. 10-1, Ex. A). Defendant also filed a Request for Judicial Notice, (ECF No. 10-2), asking that

the Court take judicial notice of a California Secretary of State records search showing that Defendant is incorporated in the state of Utah and has its principal address in Utah, (ECF No. 10-2, Ex. A).

On January 30, 2025, Plaintiff filed her Reply, challenging Defendant's initial and revised calculations but without making any further argument regarding diversity of citizenship or the size of the putative class. (*See generally* Reply.) The Court took the Motion under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). (*See* ECF No. 17.)

## LEGAL STANDARD

Although "[f]ederal courts are courts of limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), "a defendant may remove an action filed in state court to federal court if the federal court would have original subject matter jurisdiction over the action," either through diversity or a federal question. *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1243 (9th Cir. 2009) (describing 28 U.S.C. § 1441). In 2005, Congress passed the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 9-13 (2005). "CAFA 'relaxed' the diversity requirements for putative class actions." *Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 850 (9th Cir. 2020). "CAFA gives federal courts jurisdiction over certain class actions, defined in § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount-in-controversy exceeds $5 million." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 84–85 (2014).

CAFA not only confers original jurisdiction on federal courts, but also authorizes the removal of certain class actions to federal courts. *See* 28 U.S.C. § 1453. Generally, courts "strictly construe [] removal statute[s] against removal jurisdiction," *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); however, "no antiremoval presumption attends cases invoking CAFA," *Dart Cherokee*, 574 U.S. at 89. Unlike other removal statutes, "Congress intended CAFA to be interpreted expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

"To remove a case from a state court to a federal court, a defendant must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee*, 574 U.S. at 83 (quoting 28 U.S.C. § 1446(a)). Under CAFA, "a defendant's notice of removal need include only a plausible allegation that the amount-in-controversy exceeds the jurisdictional threshold." *Id.* at 89. A plaintiff may then challenge a defendant's notice of removal through a motion to remand. *See Moore-Thomas*, 553 F.3d at 1244 (discussing 28 U.S.C. § 1447(c)). "[R]emand may be ordered either for lack of subject matter jurisdiction or for 'any defect' in the removal procedure." *Aguon-Schulte v. Guam Election Comm'n*, 469 F.3d 1236, 1240 (9th Cir. 2006) (quoting 28 U.S.C. § 1447(c)).

If a plaintiff's motion to remand challenges the amount-in-controversy estimate in the defendant's notice of removal, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee*, 574 U.S. at 88. While the defendant's amount-in-controversy estimate must be grounded in the plaintiff's complaint, the parties' additional evidence may include "affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount-in-controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). In addition, the parties may rely on "a chain of reasoning that includes assumptions." *Id.*; *see also Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 992 (9th Cir. 2022). These assumptions, however, must have "some reasonable ground underlying them" and cannot be based on "mere speculation and conjecture." *Ibarra*, 775 F.3d at 1197, 1199; *see also Jauregui*, 28 F.4th at 992.

Because the Court evaluates a challenged amount-in-controversy estimate under the preponderance of the evidence standard, the defendant need only establish "that the potential damage *could* exceed the jurisdictional amount." *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014) (emphasis added) (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010)). Still, "if the evidence submitted by

both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." *Ibarra*, 775 F.3d at 1199.  In sum, the defendant has the burden of establishing by a preponderance of the evidence that the amount-in-controversy could exceed five million dollars; if the defendant fails to do so, the federal court lacks subject matter jurisdiction and the case must be remanded.  *See* 28 U.S.C. § 1447(c).

## ANALYSIS

Plaintiff asserts a facial challenge to Defendant's Notice of Removal, contending that the case should be remanded because Defendant has failed to establish that (1) the size of the class exceeds 100 members, (2) diversity of citizenship exists between Plaintiff and Defendant, and (3) the amount-in-controversy exceeds five million dollars.  Defendant opposes each ground for remand, relying on and incorporating the evidence submitted with its Opposition.

**I.    Class Size**

For the Court to have original jurisdiction under CAFA, the proposed class must have at least 100 members.  28 U.S.C. §1332(d).  In her Complaint, Plaintiff defines the California Class as "all individuals who are or previously were employed by Defendant in California, . . . and classified as non-exempt employee[s]. . . at any time during the period beginning four (4) years prior to the filling of this Complaint."  (Compl. ¶ 4.)  Plaintiff defines the California Labor Sub-Class in the same way, except limited to a period of three years.  (Compl. ¶ 35.)

In its Notice of Removal, Defendant estimated, "based on [its] interpretation of the class definition[] and a review and analysis of [its] records, that the California Class would include 4,853 people and that the California Labor Sub-Class would include 2,268 people, far exceeding the CAFA requirement.  (*See* NOR ¶¶17, 18.)  In her Motion, Plaintiff argues that "Defendant has failed to present even a shred of evidence that the size of the class exceeds 100 members, warranting the remand of this action to State Court."  (Mot. at 5.)

Defendant, however, provided such evidence in its Opposition through the Spagnolo Declaration.  According to Defendant's employment records, Defendant employed 2,947

non-exempt pilots and 2,011 non-exempt flight attendants in California between August 22, 2020 and December 31, 2024.  (Spagnolo Decl. ¶ 3.)  There would therefore be 4,958 members in the California Class.  As to the California Labor Sub-Class, according to Defendant's employment records, Defendant employed 2,738 non-exempt pilots and 1,875 non-exempt flight attendants in California between August 22, 2021, and December 31, 2024, totaling 4,613 class members.  (Spagnolo Decl. ¶ 5.)  Altogether, Defendant has met its burden of demonstrating that the size of the class exceeds 100 members.

## II.   Minimal Diversity of Citizenship

CAFA may only confer jurisdiction on federal district courts when there is minimal diversity among the parties, such that "any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A); *see also Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1226 (9th Cir. 2019).  A "natural person's state citizenship is [ ] determined by her state of domicile, not her state of residence." *Id.* at 1227 (internal quotations omitted).  "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  A corporation, on the other hand, is a citizen of the states where it is incorporated and where its principal place of business is located.  28 U.S.C. § 1332(c)(1); *see also Hertz Corp. v. Friend*, 559 U.S. 77 (2010).

In its Notice of Removal, Defendant, a corporation, states that it is a citizen of Utah because it is incorporated and has its principal place of business in Utah.  (NOR ¶ 13.)  Defendant further alleges, based on information and belief, "that a substantial number of members of the putative class identified in the Complaint are citizens of states other than Utah, including, but not limited to, California."  (*Id.* ¶ 14.)  In her Motion, Plaintiff argues that "[t]here is [] not a shred of evidence or sworn testimony" in the Notice of Removal supporting the contention that Defendant is a citizen of Utah.  (Mot. at 7.)  Contrary to Plaintiff's contention, however, a party's allegation of minimal diversity may be based on information and belief and need not contain evidentiary submissions.  *See Ehrman*, 932

F.3d at 1227; *see also Carolina Ca. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1087 (9th Cir. 2014); *see also Dart Cherokee*, 574 U.S. at 84.

Defendant nonetheless submitted evidence attached to its Opposition. The Spagnolo Declaration states that Defendant "is incorporated and has its principal place of business in Utah." (Spagnolo Decl. ¶ 2.) Additionally, Defendant requested that the Court take judicial notice of an online California Secretary of State record search showing that the Defendant Corporation was formed in the state of Utah and has its principal address in Utah. (*See* ECF No. 10-2, Ex. A.)

A court may take judicial notice of an adjudicative fact that "is not subject to reasonable dispute" because it is "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201. Information from a government agency, such as an online printout of a record search from the California Secretary of State website, is not reasonably subject to dispute. *See, e.g., No Cost Conf. Inc. v. Windstream Comms., Inc.,* 940 F. Supp. 2d 1285, 1295–96 (S.D. Cal. 2013) (finding a printout from the California Secretary of State's website showing a corporation's status as a California corporation to be "subject to judicial notice as a public record and as containing facts the accuracy of which cannot be reasonably disputed.") The Court therefore **GRANTS** Defendant's request and takes judicial notice of the information provided from the California Secretary of State record search, specifically that the Defendant corporation was formed in Utah and maintains its principal address in Utah. (ECF No. 10-2, Ex. A.)

In addition to adequately pleading the minimal diversity of the parties in its Notice of Removal, Defendant has provided evidence that it is a citizen of Utah. As such, Defendant has sufficiently established the diversity of the parties to confer jurisdiction to this Court under CAFA.

### III. Amount in Controversy

For the Court to have original jurisdiction under CAFA, the amount-in-controversy must exceed five million dollars. 28 U.S.C. § 1332(d). In is Notice of Removal, Plaintiff

estimated the amount-in-controversy for two of Plaintiff's nine claims: Plaintiff's sixth claim for relief (failure to provide accurate written wage statements) and Plaintiff's eighth claim for relief (waiting time penalties). (NOR ¶¶ 24, 25.) Pursuant to the liquidated damages provision of California Labor Code Section 226(e), and assuming one inaccurate wage statement per pay period that each putative class member was employed, Defendant estimated that Plaintiff's sixth claim for relief placed $3,795,650 in controversy. (*Id.* ¶ 24.) Pursuant to California Labor Code Section 203, and assuming that each discharged employee was not paid all wages due at the time of termination and would be entitled to the maximum waiting time penalty, Defendant estimated that Plaintiff's eighth claim for relief placed $10,203,531 in controversy. (*Id.* ¶ 26.) Together, Defendant estimated that these two of Plaintiff's nine claims placed a total of $13,999,182 in dispute, exceeding the five million dollar amount-in-controversy required under CAFA. (*Id.* ¶ 26.)

In her Motion, Plaintiff argues that "Defendant's [Notice of Removal] relies heavily on unreasonable assumptions that are wholly unsupported by evidence, which has repeatedly been a basis for this District Court—as well as other California District Courts—to remand matters." (Mot. at 7.) Plaintiff asserts that because Defendant failed to provide supporting evidence with its Notice of Removal such as corporate records or supporting declarations, "this Court must find that it has failed to meet its burden of proof and this case must be remanded to San Diego Superior Court." (*Id.*)

Plaintiff's Motion misstates what is required of a removing party under CAFA. When invoking CAFA jurisdiction, a defendant's amount-in-controversy allegation is accepted unless it is challenged by the plaintiff or questioned by the court. *See Dart Cherokee*, 574 U.S. at 87. "When a plaintiff contests the amount-in-controversy allegation, 'both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied.'" *Jauregui v. Roadrunner Transportation Services, Inc.*, 28 F.4th 989, 992 (9th Cir. 2022) (quoting *Dart Cherokee*, 574 U.S. at 88).

In her Motion, Plaintiff contested Defendant's amount-in-controversy allegation. (*See generally* Mot.) As such, with its Opposition, Defendant submitted supporting evidence. (*See generally* Opp'n; *see also* Spagnolo Decl; *see also* ECF No. 10-1, Ex. A.) Defendant submitted a declaration from Steven Spagnolo, who is the Senior Manager of Crew Support Operation Resources for the Defendant and avers to be familiar with Defendant's practices, records, and data, (*see* Spagnolo Decl. ¶ 1), as well as Defendant's Flight Attendant Policy Manual, (ECF No. 10-1, Ex. A). Plaintiff did not submit supporting evidence for the Court to consider. (*See generally* Reply; Docket.)

Though Plaintiff asserts nine claims for relief in her Complaint, the Court focuses its analysis on Plaintiff's third claim for alleged minimum wage violations suffered by the California Labor Sub-Class and finds that this claim alone exceeds the five million dollar jurisdictional threshold. In her Complaint, Plaintiff asserts that Defendant maintains "unlawful wage and hour practices" that "without limitation" deny "accurate compensation to Plaintiff and the other members of the California Labor Sub-Class in regards to minimum wage pay." (Compl. ¶ 64.) Specifically, Plaintiff alleges that Defendant "[v]iolat[ed] Cal. Lab. Code §§ 1194, 1197[, and] 1197.1[] by failing to accurately pay Plaintiff and the members of the California Labor Sub-Class the correct minimum wage pay for which Defendant is liable[.]" (Compl. ¶ 40(b).)

As explained in Section I, *supra*, Defendant has estimated that the proposed California Labor Sub-Class includes 2,738 non-exempt pilots and 1,875 non-exempt flight attendants employed in California from August 22, 2021, to December 31, 2024. After reviewing data contained in Defendant's crewmember management system, Spagnolo determined that there were 57,259 pay periods for the 2,738 California-based pilots and 67,906 pay periods for the 1,875 California-based flight attendants during the relevant period. (Spagnolo Decl. ¶ 9; Opp'n at 14.) Defendant pays its pilots and flight attendants semi-monthly. (*Id.*) Therefore, "applying a conservative assumption of one unpaid hour per pay period," or once every two weeks, Defendant calculates an assumed total of 125,165 unpaid hours from August 22, 2021, to December 31, 2024. (Opp'n at 14.)

Defendant then multiplies that hour total by "the lowest possible minimum wage applicable during the relevant period, which was $14 per hour," and concludes that Plaintiff's minimum wage claim seeks at least $1,752,310. (*Id.* at 14–15.)

The Court finds that Defendant's assumption of one unpaid hour per two-week pay period is reasonable. Plaintiff pled that "Defendant's unlawful wage and hour practices" were "without limitation," "applicable to the California Labor Sub-Class as a whole," and a result of corporate "policy and practice." (Compl. ¶ 64.) Considering Plaintiff's allegations, Defendant's estimate is in fact more conservative than estimates regularly approved by Courts in this circuit. *See, e.g., Jasso v. Money Mart Express, Inc.* No. 11-CV-5500 YGR, 2012 WL 699465, at *5 (N.D. Cal. Mar. 1, 2012) (pleading that defendant had a "uniform policy and scheme" of violating employment law and that violations took place "at all material times" justified defendant's assumption of one violation per employee per week); *see also Arreola v. Finish Line,* No. 14-CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) (finding that a plaintiff's allegation that an employer has a regular practice of employment laws that harm each member of a putative class supports a defendant's assumption that every employee experienced at least one violation once per week); *see also Kastler v. Oh My Green, Inc.*, No. 19-CV-02411-HSG, 2019 WL 5536198, at *4 (N.D. Cal. Oct. 25, 2019) (finding that defendant's assumption of one minimum wage violation per week "is a conservative estimate routinely endorsed by courts in evaluating CAFA's amount in controversy requirement). Because district courts in the Ninth Circuit regularly endorse removing defendants assuming one violation per week in estimating minimum wage violations, the Court finds that Defendant's assumption of one violation every two weeks, or once per pay period, is reasonable.

Defendant's use of the applicable minimum wage pay rate is also reasonable. In *Jasso v. Money Mart Express, Inc.*, a case involving a similar employment action brought by a putative class, the court found that the defendant's amount-in-controversy estimations were reasonable after it relied on the lowest *average* wage paid to the proposed class members during the relevant period. 2012 WL 699465 at *5. Here, Defendant relies not

on the lowest average rates paid to its pilot and flight attendants, but the minimum daily rate as set out in the pilot and flight attendant's respective Collective Bargaining Agreements ("CBAs").[1] (Opp'n at 21.) By basing its calculations on the minimum rate of pay rather than the average rate of pay, Defendant's assumption is again more conservative than those approved as reasonable by other courts in this Circuit. *See, e.g., Watson v. San Diego Dialysis Servs., Inc.*, No. 24CV0228-LL-JLB, 2024 WL 4679117 (S.D. Cal. Nov. 5, 2024) (finding that the defendant reasonably relied on class member employees' average hourly wages in estimating amount-in-controversy for CAFA removal); *see also Arreola*, 2014 WL 6982571 at *4 (same). As such, the Court finds that Defendant's estimation of $1,752,310 placed in controversy by Plaintiff's minimum wage violation claim is founded on reasonable assumptions.

Plaintiff's Complaint also seeks liquidated damages for the alleged minimum wage violations pursuant to California Labor Code Sections 1194.2 and 1197, which doubles the amount of unpaid claimed wages. (Compl. at Prayer for Relief 2(E).) Because Defendant estimates the amount of unpaid claimed wages as $1,752,310, Defendant then adds an additional $1,752,310 to the amount-in-controversy. (Opp'n at 15.)

Plaintiff's Complaint also seeks statutory penalties for minimum wage violations under California Labor Code Section 1197.1. (Compl ¶ 71.) Section 1197.1 provides for a $100 penalty for the initial pay period in which an employee is underpaid and $250 for subsequent pay periods in which an employee is underpaid. Cal. Lab. Code § 1197.1(a). Such penalties are subject to a one-year statute of limitations. *See Dalton v. Lee Publications, Inc.*, No. 08CV1072BTMNLS, 2009 WL 57113, at *2 (S.D. Cal. Jan. 8,

---

[1] The Spagnolo Declaration explains that Defendant's pilots and flight attendants are not paid on an hourly basis, but instead based on "complex, negotiated[] compensation formulas set forth in their respective Collective Bargaining Agreements ("CBAs")." (Spagnolo Decl. ¶ 6.) Under the CBAs, pilots and flight attendants earn credit hours each month based on the trips that they work. (*Id.*) A pilot or flight attendant's "credit rate," which is negotiated and based on seniority, is then applied to their credit hours to determine their monthly pay. (*Id.*) However, there is also a "minimum daily guarantee" which sets the minimum amount that a pilot or flight attendant may earn for each day on duty. (*Id.* ¶ 8.)

2009) ("A one year statute of limitations period applies to Plaintiffs' claims for penalties under California Labor Codes Sections 226, 1174, and 1197.1."). In its Opposition, supported by the Spagnolo Declaration, Defendant states that there were 23,731 pay periods for California-based pilots and 22,266 pay periods for California-based flight attendants from August 22, 2023, to December 31, 2024. (Opp'n at 15; Spagnolo Decl. ¶ 9.) Within the one-year statute of limitations period, therefore, each of the 1,609 California-based pilots experienced an initial pay period, and the remaining 22,122 pay periods were subsequent pay periods. (Opp'n at 15 n.4.) Correspondingly, within the one-year statute of limitations period, each of the 1,134 California-based flight attendants experienced an initial pay period, and the remaining 21,132 pay periods were subsequent pay periods. (*Id.*) As such, the California-based pilots in the California Labor Sub-Class could be entitled to $5,691,400 in statutory penalties, while the California-based flight attendants in the California Labor Sub-Class could be entitled to $5,396,400 in statutory penalties. (Opp'n at 15.) Together, this results in $11,087,800 in potential statutory penalties. (*Id.*)

In sum, Defendant estimates that Plaintiff's minimum wage claim seeks $1,752,310 in actual damages, $1,752,310 in liquidated damages, and $11,087,800 in statutory penalties. (*Id.* at 15–16.) Thus, the amount-in-controversy for this one claim alone totals $14,592,420, well exceeding CAFA's five million dollar jurisdictional requirement. (*Id.* at 16.)

In her Reply, Plaintiff argues that "Defendant's Opposition still suffers from the same unreasonable assumption plaguing its Notice of Removal, and stubbornly ignores the fact that removal jurisdiction cannot be established by 'mere speculation and conjecture, with unreasonable assumptions.' *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015)." (Reply at 1.) Plaintiff once again emphasizes that her "Complaint carefully states that employees were only 'from time to time' and 'periodically' unable to take off duty breaks were not fully relieved of duty for their meal and rest breaks." (*Id.* at 3 (quoting Compl. ¶¶ 8, 11, 12).) Plaintiff further asserts that Defendant's estimated amount-

in-controversy calculations are "based on an arbitrary 'one hour' per pay period for minimum wages . . . without any bases in fact or tying it to work schedules or the electronic time records, to which Defendant has access and, indeed, presumably reviewed in order to determine much of its other analysis." (Reply at 5 (quoting Opp'n at 14).)

The Court disagrees. First, rather than relying on "mere speculation and conjecture," (Reply at 1), Defendant supports its estimations with the Spagnolo Declaration, made by an individual with personal knowledge of Defendant's corporate practices and who "reviewed reports prepared from data contained in [Defendant]'s crewmember management and payroll systems" in preparing his declaration.

Second, though Plaintiff indeed alleges that Defendant's labor violations were "from time to time" (Compl. ¶¶ 8, 11, 12, 14, 87, 91, 96), she also alleges that Defendant's minimum wage violations were "without limitation" and a result of Defendant's "policy and practice," (Compl. ¶ 64). In light of these allegations, Defendant's assumed violation rate is reasonable. *See Watson*, 2024 WL 4679117 at 3 ("Defendant's 20% violation rate assumption is reasonable based on Plaintiff's 'from time to time' and 'policy and practice' allegations in the complaint.") (citing *Ortiz-Dixon v. FedEx Ground Package Sys., Inc.*, No. 523CV01140ODWSPX, 2023 WL 9064893, at *3 (C.D. Cal. Dec. 7, 2023) (finding a 20% violation rate assumption to be reasonable where allegations of "from time to time" are coupled with "pattern and practice" allegations in the complaint); *Cavada v. Inter-Cont'l Hotels Grp., Inc.*, No. 19CV1675-GPC(BLM), 2019 WL 5677846, at *7 (S.D. Cal. Nov. 1, 2019) (finding "allegations of 'periodically' or 'from time to time' along with broader language of 'pattern and practice' and 'policy and practice' would support a violation rate under 25%")). Here, rather than assuming a 20% (once per week) violation rate, Defendant reasonably assumed that a violation occurred once every two weeks.

Third, though Plaintiff is correct that Defendant has access to work schedule or electronic time records and reviewed such records in estimating the amount in controversy, (Spagnolo Decl. ¶ 4), such access does not heighten Defendant's burden in establishing removal jurisdiction under CAFA. *See, e.g., Muniz v. Pilot Travel Centers LLC*, No. CIV.

S-07-0325FCDEFB, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007) ("There is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation."); *see also Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-CV-00719-NC, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019) ("But [the defendant] is not obligated to research, state, and prove [the plaintiff's] claims." (internal quotation marks and citation omitted)); *see also Lucas v. Michael Kors (USA), Inc.*, No. CV181608MWFMRWX, 2018 WL 2146403, at *7 (C.D. Cal. May 9, 2018) ("Furthermore, Defendant MK is not required to prove Plaintiff's case for her by proving the actual rates of violation at the removal stage.")

The Court finds that Defendant's estimated amount-in-controversy for Plaintiff's minimum wage claim, $14,592,420, is supported by evidence, founded on reasonable assumptions, and well above the five million dollar threshold set by CAFA.

## CONCLUSION

Defendant has established, by a preponderance of the evidence, that CAFA's jurisdictional requirements are satisfied; specifically, Defendant has demonstrated that the proposed class includes at least 100 members, minimal diversity exists among the parties, and the amount-in-controversy exceeds five million dollars. As such, Plaintiff's Motion to Remand is **DENIED**.

**IT IS SO ORDERED.**

Dated: March 6, 2025

_____
Honorable Todd W. Robinson
United States District Judge